UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ESTATE OF LAVON KING,

Plaintiff,

vs.

CITY OF JERSEY CITY, CITY OF
JERSEY CITY POLICE
DEPARTMENT, ROBERT COWAN,
KENNETH BOWES, ABC CORPS.
#1-3, and JOHN DOES #1-3,

Defendants.

Civ. No. 2:15-cv-6868-KM-MAH

OPINION

### KEVIN MCNULTY, U.S.D.J.:

Mr. Lavon King was shot by a Jersey City police officer and died on June 24, 2014. The Estate of Lavon King brings causes of action against the City of Jersey City, the Jersey City Police Department, Kenneth Bowes (the police officer allegedly involved), and Robert Cowan (the police chief). Presently before the court is Chief Cowan's motion to dismiss the complaint.

### I. BACKGROUND

Solely for purposes of this motion to dismiss, the allegations of the Complaint are assumed to be true and all inferences are drawn in favor of the plaintiff.

Mr. Lavon King was a resident of New Jersey and is identified as an African-American man, a fact possibly relevant to the claims in the Complaint. (Compl. ¶ 5). On June 24, 2014, Mr. King was in Jersey City, New Jersey. (Compl. ¶ 14). At approximately 4:30 pm, officer Kenneth Bowes and another, unknown police officer observed Mr. King and began to pursue him. (Compl.

1

¶¶ 14-15). Officer Bowes pursued Mr. King on foot while the unknown police officer followed in a vehicle. (Compl. ¶ 16). It is alleged that Mr. King was chased through several backyards on Ege Avenue in Jersey City. (Compl. ¶ 17). Mr. King, who was unarmed, attempted to hide in an unlocked shed. (Compl. ¶¶ 17-18). Bowes came to the shed, opened the door, and shot Mr. King once in the abdomen. (Compl. ¶¶ 19-20). Mr. King died of his injuries. (Compl. ¶ 20).

The Estate of Lavon King brings eight claims in its complaint:

- **Claim One:** deprivation of civil rights under 42 U.S.C. § 1983 ("Section 1983") by the use of excessive force (Compl. ¶¶ 21-40);
- **Claim Two:** racial discrimination in violation of the Equal Protection Clause and 42 U.S.C. § 1981 (Compl. ¶¶ 41-57);
- **Claim Three:** violation of Section 1983 by failure to implement appropriate policies, customs, and practices (Compl. ¶¶ 58-61);
- **Claim Four:** violation of Section 1983 by failure to properly screen, supervise, discipline, transfer, counsel, and/or otherwise control police officers who are repeatedly accused of such acts (Compl. ¶¶ 62-72);
- **Claim Five:** violation of Section 1983 through respondeat superior (Compl. ¶¶ 73-76);
- **Claim Six:** violation of the New Jersey State Constitution (Compl. ¶¶ 77-80);
- **Claim Seven:** violation of 42 U.S.C. § 1986 for neglect to prevent (Compl. ¶¶ 81-82);
- **Claim Eight:** negligence and wrongful death (Compl. ¶¶ 83-91).

Police Chief Cowan has moved to dismiss the complaint. (ECF No. 42). Cowan claims that the Estate failed to timely serve him, that the Complaint fails to state a claim upon which relief can be granted, and that as Chief of Police he is protected by qualified immunity. (ECF No. 42).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*,

2

654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

#### A. Proper Service and the Statute of Limitations

Mr. Cowan argues that he was not served in a timely manner and that the allegations against him should therefore be dismissed with prejudice. Mr. Cowan's argument depends both upon the statute of limitations and the time limits for service of process.

Section 1983 does not have its own statute of limitations. *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000). Rather, courts "use the statute of limitations for the state where the federal court sits unless its application would conflict with the Constitution or with federal law." *Id.* Specifically, a Section 1983 claim is characterized as a personal-injury claim and is governed by the state's

3

statute of limitations for personal-injury claims. *See Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). The relevant New Jersey statute of limitations is two years. *See Brown v. Foley*, 810 F.2d 55, 56-57 (3d Cir. 1987) (citing N.J. Stat. Ann. § 2A:14-2). The Estate's claims are based on the events of June 24, 2014. Therefore, the Estate's claims would be timely only if brought on or before June 24, 2016.

Overlaid upon that statute of limitations is the limitation of Fed. R. Civ. P. 4(m).[1] Under the version effective at that time, Rule 4(m) required that a summons and complaint be served within 120 days after filing, unless the period is extended for good cause by the court.[2]

The Estate filed the complaint on September 15, 2015, well within the two-year limitations period for a Section 1983 action. Cowan maintains, however, that he was not served until after the expiration of the then-

---

[1] In this case, filing the complaint stopped the statute of limitations, but service of process needed to be completed within 120 days of filing the complaint. This is a federal-question-jurisdiction case where the federal right—a 1983 action—requires borrowing a state statute of limitations. "[W]hen the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been 'commenced' in compliance with Rule 3 [of the Federal Rules of Civil Procedure] within the borrow period." *West v. Conrail*, 481 U.S. 35, 39 (1987). Pursuant to Rule 3, a complaint must be filed, but need not be served, within the relevant limitations period. *See* Fed. R. Civ. P. 3; *Pilchman v. Am. Fed. of State, Cty. & Mun. Emps., AFL-CIO*, No. 10-cv-4976, 2011 WL 4526455, at *6 (S.D.N.Y. Sep. 29, 2011).

[2] The current Rule 4(m) states:

> Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The time limit for service was shortened from 120 days to 90 days, effective December 1, 2015. *See* 4 Wright & Miller, *Federal Practice & Procedure* § 1051 (4th ed. 2009); *see also* Letter from Chief Justice John G. Roberts to Hon. John A. Boehner, Proposed Amendments to the Federal Rules of Civil Procedure (Apr. 29, 2015), https://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf (stating that the 2015 amendments, including the shortened time limit for service of process, will take effect on December 1, 2015).

4

applicable 120-day limit of Rule 4(m). Therefore, he says, service was not timely, and indeed it did not occur until well after the two-year limitations period had run. Therefore, he argues, the action, despite having been timely filed, must be dismissed because it was untimely served, and is now barred by the statute of limitations.

The 120-day deadline of Rule 4(m), as noted, began running on September 15, 2015, and expired on January 13, 2016. On June 9, 2017—after the deadline for service had expired—the Estate filed a motion for an extension of time in which to serve Mr. Cowan. (ECF No. 23). On August 23, 2017, Magistrate Judge Hammer issued an order finding that good cause existed to extend the Rule 4(m) deadline for service of the complaint upon Mr. Cowan. (ECF No. 26). The Estate, he found, had attempted to serve Mr. Cowan *via* service upon the clerk of Jersey City in late September 2015. (ECF Nos. 26, 49). At the time, however, Mr. Cowan was no longer employed by the city. (*Id.*). The plaintiff was unaware of that fact, however, and the clerk allegedly did not inform the process server that Cowan had left his position.[3] (Mr. Cowan alleges that the city told the Estate that it was unable to accept service on Mr. Cowan's behalf in late September 2015 (ECF No. 49)).

Judge Hammer gave the Estate until October 6, 2017 to effectuate service. (ECF No. 26). The Estate claims that it made repeated unsuccessful attempts to serve Mr. Cowan at the address provided by Jersey City—and that its efforts included the hiring of two process servers. (ECF No. 47, p. 3). The Estate finally succeeded in serving Mr. Cowan on November 11, 2017. (ECF No. 32).

"A [d]istrict [c]ourt must extend the time for service ... where a plaintiff demonstrates good cause for the failure to timely serve the defendant." *Maltezos v. Giannakouros*, 522 F. App'x 106, 108 (3d Cir. 2013) (citing *McCurdy*

---

[3] The Estate served the complaint on defendants Jersey City and the Jersey City Police Department within the 120-day time limit.

5

*v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998)). Three factors are considered when determining whether good cause exists:

"(1) reasonableness of plaintiff's efforts to serve

(2) prejudice to the defendant by lack of timely service and

(3) whether plaintiff moved for an enlargement of time to serve."

*MCI Telecomms Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (line breaks added).

The good cause requirements of *MCI* are met. (1) The Estate has shown reasonable efforts to serve defendant. The Estate attempted to serve Mr. Cowan through Jersey City, which used to employ him. The City allegedly did not, or at least did not immediately, inform the Estate that Mr. Cowan had retired and the City could not accept service on his behalf. Once the Estate learned this, it attempted to serve Mr. Cowan at his address several times. (2) There is no showing that Mr. Cowan would be prejudiced by the lack of timely service. (3) The plaintiff did move for an enlargement of time to serve (although it was still unsuccessful in accomplishing service within the extended time period).

Even if a plaintiff fails to show good cause, however, the district court must still consider whether any additional factors warrant a discretionary extension of time. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1307 (3d Cir. 1995). A court may consider (1) actual notice of the legal action; (2) prejudice to the defendant; (3) the statute of limitations on the underlying causes of action; (4) the conduct of the defendant; (5) whether the plaintiff is represented by counsel; and (6) any other additional factors. *See Chiang v. United States SBA*, 331 F. App'x 113, 116 (3d Cir. 2009). A court must consider these factors, moreover, in light of the Third Circuit's "preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

I elect to exercise my discretion to extend the time for service in this matter. The Estate timely filed its Complaint. It attempted to serve Mr. Cowan via the City—and the City allegedly did not inform the Estate that it could not

6

accept service on Mr. Cowan's behalf. When the Estate learned that Mr. Cowan had not been properly served, the Estate made several attempts to serve Mr. Cowan using the address provided by the City. These attempts were initially unsuccessful, but apparently not through any fault of the plaintiff. Those efforts, I find, were sufficient to require that this case be addressed on the merits.

## B. Sufficiency of Allegations to State a Claim

The Estate's opposition brief clarifies that only claims three, four, six, seven, and eight are asserted against defendant Cowan.[4] I address these in turn.

### i. Claims Three and Four: Failure to train and implement appropriate procedures, policies, and customs

Claims three and four allege that Mr. Cowan failed to appropriately train, hire, and supervise police officers, and also failed to implement appropriate policies, customs, and practices. According to the Estate, these failures led to the death of Mr. King.

Supervisory liability under Section 1983 cannot accrue based solely on respondeat superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009); *Bernard v. E. Stroudsburg Univ.*, 700 F. App'x 159, 163 (3d Cir. 2017); *Bistrian v. Levi*, 696 F.3d 352, 366 & n.5 (3d Cir. 2012). Thus, to establish supervisory liability on a Section 1983 claim, a plaintiff must show that a supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Bernard*, 700 F. App'x at 163. Supervisory liability may also exist if a supervisor has implemented or maintained a policy, practice, or

---

[4] Claim one (deprivation of civil rights) and claim two (racial discrimination) are not asserted against Mr. Cowan. (ECF No. 47 p. 7). The Estate concedes that the fifth claim (Section 1983 respondeat superior liability) must be dismissed because there is not respondeat superior liability under Section 1983. (ECF No. 47, p. 11).

7

custom that harmed a plaintiff. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).

The Estate alleges that defendants, including Mr. Cowan, adopted careless and reckless policies, customs, or practices that included the following:

> allowing police officers of the City of Jersey City Police Department to confront citizens without any reasonable training in when to use force in effecting arrest and in such a way as to cause the deprivation of Plaintiff's right to be free from unreasonable seizures under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

(Compl. ¶ 59). The complaint states that this failure to train "amounts to deliberate indifference to the rights of Plaintiff to be free from excessive force and unreasonable seizures ...." (Compl. ¶ 60).

The standard for personal liability under Section 1983 is "no less stringent than the standard of liability for the public entities that they serve." *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). That standard was delineated in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See id.* at 694 ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under § 1983.").

Here the policy in question consists of a failure to train or supervise municipal employees. In these circumstances, Section 1983 liability requires a showing that the failure amounts to "deliberate indifference" to the rights of persons with whom those employees will come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Third Circuit has explicated the *Canton* holding as follows:

> The Court in *Canton* observed that failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of

8

constitutional rights.... For example, if the police often violate rights, a need for further training might be obvious.

*Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).

The Third Circuit has also distilled the Supreme Court's *Walker* holding to a three-part test:

> [I]in order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

*Id.* (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (footnote omitted)).

In the present case, as in *Carter* and *Walker*, elements (1) and (3) are sufficiently alleged. (1) City policymakers (including, inferably, Chief Cowan) knew that police officers would arrest individuals likely to run away or resist. Moreover, (3) the wrong choice by a police officer could certainly result in the use of excessive force, death of an arrestee, and the deprivation of constitutional rights. *See Carter*, 181 F.3d at 357. Element (2) is a bit more complex. Although it is ordinarily inappropriate to simply assume police officers will use excessive force, "where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." *Id.* at 357 (citing *Walker*, 974 F.2d at 300). Thus in *Walker*, the Second Circuit allowed the plaintiff to obtain discovery on that factor:

> [Plaintiff] Walker should be allowed to pursue discovery in order to determine whether there was a practice of condoning perjury (evidenced perhaps by a failure to discipline for perjury) or a pattern of police misconduct sufficient to require the police department to train and supervise police officers to assure they tell the truth.

*Walker*, 974 F.2d at 300. By analogy, in *Carter*, the Third Circuit found that the plaintiff should be able to pursue discovery to determine whether there was

9

a pattern within the police and District Attorney's Office of using perjurious eyewitnesses and introducing such false evidence into court. *Carter*, 181 F.3d at 343, 357.

Here, too, the complaint sufficiently alleges deliberate indifference. The plaintiff should be allowed to pursue discovery to determine if there has been a pattern of excessive force or police brutality among officers of the Jersey City Police Department—and if any training or corrective measures have been taken. I do not say that such a pattern has been established—only that plaintiff may attempt to establish it. Claims three and four will not be dismissed at this time.

### ii. Claim Six: New Jersey Constitution

Claim six asserts violations of the New Jersey Constitution. Courts have held that the New Jersey Constitution does not itself confer a private right of action for a violation of an individual's rights, except for employment discrimination under an equal protection theory. *See Williams v. Lenape Bd. of Educ.*, No. 17-cv-7482, 2018 WL 916364, at *6 (D.N.J. Feb. 16, 2018). This is not an employment discrimination case and thus there is no direct private right of action under the New Jersey Constitution.

The New Jersey Civil Rights Act ("NJCRA"), however, provides a private right of action for violations of the New Jersey Constitution. *Tucker v. New Jersey Dep't of Corr.*, No. 15-cv-6808, 2018 WL 1003711, at *4 (D.N.J. Feb. 21, 2018). It is true that the Estate does not specifically cite the NJCRA. However, "'[d]efendants cite no authority for the proposition that Rule 8(a) requires [p]laintiff to cite the specific law on which he relies.' ... Rule 8(a) requires that a complaint put the defendant on notice of the basis of the claim asserted against him." *Fairview Ritz Corp. v. Borough of Fairview*, No. 9-cv-875, 2013 WL 6865561, at *2 (D.N.J. Dec. 20, 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Thompson v. Med-Mizer, Inc.*, No. 10-cv-2058, 2011 WL 1085621, at *8 (E.D. Pa. Mar. 21, 2011)). The Estate's assertion that defendants' failure to train and supervise police officers violated Mr. King's civil

10

rights under the New Jersey Constitution constituted sufficient notice that it sought relief under the NJCRA. Indeed, as a practical matter the NJCRA is the only means of asserting such a claim, and it is fairly routine for civil rights plaintiffs in this State to do so. Accordingly, I will construe claim six as a NJCRA claim.

The NJCRA is analogous to the federal Section 1983, and the two are generally construed in parallel. *Id.* "[C]ourts in this district have generally interpreted the NJCRA to be coextensive with its federal counterpart." *See Estate of Lydia Joy Perry ex rel. Kale v. Sloan*, No. 10-cv-4646, 2011 WL 2148813, at *2 (D.N.J. May 31, 2011) (collecting cases). The parties have not suggested any distinction between claims under the NJCRA and their counterparts under 42 U.S.C. § 1983. Therefore, for the reasons stated in subsection III.B.i, *supra*, I will deny the motion to dismiss claim six insofar as it asserts a claim for failure to train and failure to supervise.[5]

### iii. Claim Seven: Section 1986

Claim seven sets forth a Section 1986 neglect-to-prevent action. Section 1986 provides as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]

42 U.S.C. § 1986.

Section 1986 provides for a private right of action against anyone who knew of a conspiracy to interfere with civil rights—which is punishable under

---

[5] Claim six cites several portions of the New Jersey Constitution. (Compl. ¶ 78). The only specific allegation in that subsection is that the defendants' failure to train and supervise the police officers caused the alleged violation of Mr. King's civil rights. (Compl. ¶¶ 77-80).

11

Section 1985—and failed to prevent the wrong. *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980); *Fishman v. De Meo*, 590 F. Supp. 402, 406-07 (E.D. Pa. 1984). The Estate does not assert a claim under Section 1985, however, either explicitly or by implication from the facts alleged. Without a valid claim under Section 1985, the Estate cannot recover under Section 1986. "Having failed to state a claim under § 1985[], a fortiori [the plaintiff] failed to state a claim under § 1986." *Brawer v. Horowitz*, 535 F.2d 830, 841 (3d Cir. 1976).

The Estate wishes to "amend the complaint to add the pre-requisite 1985 claims." (ECF No. 47, p. 12). However, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal citations and quotations omitted). The permissible role of a plaintiff's opposition brief is merely to explain the "legal theories ... that [] find support in the allegations set forth in the complaint." *Id.*

Claim seven, then, will be dismissed without prejudice to a properly supported motion to amend the complaint to state a valid claim under Sections 1985 and 1986.

### iv. Claim Eight: Negligence and wrongful death

Claim eight is untitled, but it alleges negligence and cites New Jersey's wrongful death statute. The New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59-1-1 *et seq.*, grants immunity from liability for actions of public employees while in pursuit for law enforcement purposes. N.J. Stat. Ann. § 59:5–2(c) ("Neither a public entity nor a public employee is liable for ... any injury resulting from or caused by a law enforcement officer's pursuit of a person."). This immunity extends to "all injuries arising out of a police pursuit, even those that would not have occurred but for the negligence of the police." *Epifan v. Roman*, No. 11-cv-2591, 2014 WL 4828606, at *16 (D.N.J. Sept. 29, 2014) (citing *Alston v. City of Camden*, 773 A.2d 693, 697 (N.J. 2001)). However, NJTCA immunity does not extend to public employees if their

conduct "was outside the scope of his employment or constituted a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:3-14(a).

I have addressed Mr. Cowan's potential liability for failure to train or implement policies in subsection III.B.i. These are in essence alleged failures of supervision. There are no facts alleged in the complaint to suggest that Mr. Cowan committed acts outside the scope of his employment, or acts involving criminal activity, willful misconduct, actual fraud, or actual malice in connection with the death of Mr. King. The complaint alleges no facts to suggest that Mr. Cowan played any direct or intentional role in Mr. King's death. The immunity provided by the NJTCA thus requires that claim eight be dismissed as against Mr. Cowan.

### C. Qualified Immunity

As to federal constitutional claims, "qualified immunity shields government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Schneyder v. Smith*, 653 F.3d 313, 331 (3d Cir. 2011) (internal quotations omitted); *see also Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 171 (3d Cir. 2016) (noting that in circumstances where "the failure to act quickly and decisively ... may have devastating consequences" qualified immunity exists "unless clearly established law puts [officials] on notice that their conduct is a violation of the Constitution").

Qualified immunity issues (such as whether a violation was "objectively apparent" under the circumstances at the time) may require the kind of factual context that is available only on summary judgment or at trial. Nevertheless, when a qualified immunity issue is raised on a motion to dismiss, the court is obligated to address it. "[U]nless the plaintiff's allegations state a claim of

violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). As *Thomas* implies, at the pleading stage such a clear violation need only be alleged, not proven. "The focus of the qualified immunity inquiry is on the allegations ...." *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014).

The qualified immunity analysis has two parts:

(1) The court must "determine whether the facts, and inferences drawn therefrom, taken in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right." *McGreevy*, 413 F.3d at 364 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). This step is functionally equivalent to the standard employed on a Rule 12(b)(6) motion to dismiss.

(2) The court must "determine whether, as a legal matter, the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." *Id.* (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)). This step requires "that in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent." *Id.* at 366 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

The court has the discretion to analyze the steps in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (partially overruling *Saucier*, *supra*, and no longer requiring courts to determine issues (1) and (2) in that order).

(1) First, as discussed in subsection III.B.i, *supra*, the complaint alleges that Mr. Cowan violated federal constitutional rights by being deliberately indifferent to the use of excessive force by Jersey City police officers. The complaint, to be sure, does not set forth detailed allegations showing a pattern of police brutality or a lack of sufficient training or supervision. Nonetheless, it sufficiently alleges deliberate indifference of a kind that could have violated Mr. King's constitutional rights.

14

(2) The alleged constitutional violation was clearly established at the time of the incident. The right to be free from excessive, deadly force has been well-established. *See Mullenix v. Luna,* 136 S. Ct. 305, 308-09 (2015) (citing several pre-2014 cases about excessive force); *see also Tennessee v. Garner,* 471 U.S. 1 (1985). The doctrine of deliberate indifference also was clearly established at the relevant time. *See City of Canton v. Harris,* 489 U.S. 378, 388 (1989); *Beers-Capitol v. Whetzel,* 256 F.3d 120, 142 n.15 (3d Cir. 2001).

"Conduct that is deliberately indifferent to an excessive risk to [individuals] cannot be objectively reasonable conduct." *Beers-Capitol,* 256 F.3d at 142 n.15. In *Carter v. City of Philadelphia,* the Third Circuit held that if a defendant acted with deliberate indifference to constitutional rights, then the defendant's conduct was not objectively reasonable and hence the defense of qualified immunity would not be available. 181 F.3d 339, 356 (3d Cir. 1999); *see also Beers-Capitol,* 256 F.3d at 142 n.15. "[A] supervisory officer is entitled to qualified immunity for a § 1983 failure to train action *unless* a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the specific constitutional violation at issue." *Parrish v. Ball,* 594 F.3d 993, 1002 (8th Cir. 2010) (emphasis added); *see also Gold v. City of Miami,* 121 F.3d 1442, 1447 (11th Cir. 1997) (noting that a supervisor is entitled to qualified immunity unless "a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff and his conduct was causally related to the constitutional violation committed by his subordinate" (quotation omitted)).

Whether deliberate indifference actually occurred of course cannot be resolved at this, the pleading stage. Likewise, however, Mr. Cowan cannot at this stage carry his burden to establish that he is entitled to immunity. *See Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 726 (3d Cir. 1989) (holding that it is the defendant's burden to establish that he or she is entitled to qualified immunity). Mr. Cowan may or may not have instituted or maintained adequate supervision and training programs; there may or may not have been

15

a pattern or history of excessive force by Jersey City police officers. Resolution of such questions must await discovery and further proceedings. For now, however, I must deny Mr. Cowan's motion to dismiss on qualified immunity grounds.

## IV. CONCLUSION

For the foregoing reasons, defendant Cowan's motion to dismiss will be granted as to claims one (deprivation of civil rights), two (racial discrimination), five (Section 1983 respondeat superior liability), seven (Section 1986 claim), and eight (negligence and wrongful death).

Defendant Cowan's motion to dismiss will be denied as to counts three and four (Section 1983 liability), and six (NJCRA).

An appropriate order accompanies this opinion.

Dated: June 29, 2018

_____
**KEVIN MCNULTY**
**United States District Judge**